# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COPY PROTECTION LLC, | ) |
| | ) |
| Plaintiff, | ) C.A. No. 14-365 (LPS) |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| NETFLIX, INC., | ) |
| | ) |
| Defendant. | ) |

## BRIEF IN SUPPORT OF NETFLIX, INC.'S MOTION TO STAY LITIGATION PENDING INTER PARTES REVIEW OF THE PATENT-IN-SUIT

OF COUNSEL:

Clay C. James
C. Matthew Rozier
Aaron S. Oakley
HOGAN LOVELLS US LLP
One Tabor Center, Suite 1500
1200 Seventeenth Street
Denver, CO 80202
Tel: (303) 899 7300

Melissa J. Baily
James D. Judah
Adam Botzenhart
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600

Dated: April 24, 2015
1187833/ 41572

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Netflix, Inc.*

**TABLE OF CONTENTS**

Page

I. NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

II. SUMMARY OF THE ARGUMENT ................................................................................3

III. ARGUMENT......................................................................................................................4
    A. IPR Proceedings Provide A Rapid, Streamlined Process To Assess Patent Validity..............................................................................................4
    B. Copy Protection's Only Business Is To Monetize Patents .....................................4
    C. All Relevant Factors Favor Staying This Litigation ................................................5
        1. A Stay Will Simplify The Issues ................................................................ 5
        2. A Stay Will Not Unduly Prejudice Or Present A Tactical Disadvantage To Copy Protection .............................................................. 6
        3. The Early Stage Of The Litigation Favors A Stay................................... 11

IV. CONCLUSION.................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*AIP Acquisition LLC v. Level 3 Comm'ns, LLC*,
  C.A. No. 12-617-GMS, slip op. (D. Del. Jan. 9, 2014) .......................................................... 7, 13

*Air Vent, Inc. v. Owens Corning Corp.*,
  2012 WL 1607145, (W.D. Pa. May 8, 2012) ............................................................................ 11

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
  C.A. No. 12-1107-GMS, 2014 U.S. Dist. LEXIS 47430, (D. Del. Apr. 7, 2014) .................... 10

*Cephalon, Inc. v. Impax Labs., Inc.*,
  2012 WL 3867568, (D. Del. Sept. 6, 2012). ............................................................................... 7

*Cirrex Sys. LLC v. Verizon Servs. Corp.*,
  C.A. No. 13-921-GMS, slip op. (D. Del. Oct. 1, 2014) ............................................................. 12

*Cost Bros., Inc. v. Travelers Indem. Co.*,
  760 F.2d 58, 60 (3d Cir. 1985) ..................................................................................................... 7

*Ethicon, Inc. v. Quigg*,
  849 F.2d 1422 (Fed. Cir. 1988) .................................................................................................... 7

*Fresenius USA, Inc. v. Baxter, Intern., Inc.*,
  721 F.3d 1330 (Fed. Cir. 2013) .................................................................................................. 12

*In re Bear Creek Techs.*,
  2013 WL 3789471 (D. Del. July 17, 2013) ................................................................................ 11

*Neste Oil Oyj v. Dynamic Fuels, LLC*,
  2013 U.S. Dist. LEXIS 92416 (D. Del. July 2, 2013) .......................................................... 12, 13

*PersonalWeb Technologies, LLC v. Facebook, Inc.*,
  2014 WL 116340, (N.D. Cal. Jan. 13, 2014) .............................................................................. 11

*Princeton Digital Image Corp. v. Konami Digital Ent't Inc.*,
  2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014) ............................................................... passim

*Softview LLC v. Apple Inc., et al.*,
  2013 WL4757831 (D. Del. Sept. 4, 2013) .................................................................................... 7

*SunPower Corp. v. Panelclaw Inc.*,
  C.A. No. 12-1633-GMS, slip op. (D. Del. May 16, 2014) ......................................................... 12

*Walker Digital v. Google Inc.*,
  2013 U.S. Dist. LEXIS 52176 (D. Del. Apr. 11, 2013) .............................................................. 12

**Statutes**

157 Cong. Rec. S952 ............................................................................................................... 6

35 U.S.C. § 315 ...................................................................................................................... 8

35 U.S.C. § 102. ..................................................................................................................... 9

35 U.S.C. § 307 .................................................................................................................... 12

35 U.S.C. §§ 314(b) .......................................................................................................... 5, 6

37 C.F.R. § 42.100. ................................................................................................................ 5

37 C.F.R. § 42.107(b) ............................................................................................................ 5

In this patent lawsuit, Plaintiff Copy Protection LLC ("Plaintiff" or "Copy Protection") accuses Defendant Netflix, Inc. ("Netflix") of infringing claims 1-14, 16-20, and 22-26 (the "Asserted Claims") of U.S. Patent No. 7,079,649 ("the '649 patent"). Netflix filed a Request for *Inter Partes* Review ("IPR") with the U.S. Patent & Trademark Office ("PTO") on March 23, 2015, which is currently pending and challenges the validity of all the Asserted Claims.

The Court should stay this case pending the outcome of the IPR. This case is in its relatively early stages, with most of the major case milestones—and the associated expense and burden—still to come. A stay would allow the Court and the parties to avoid expending resources for the next 18 months on this litigation while the PTO determines whether the Asserted Claims are valid. Copy Protection does not practice the patent, produce or sell any products, or compete with Netflix. Therefore, it will not be unduly prejudiced by a stay because it can be adequately compensated by money damages if the Asserted Claims are not cancelled and liability is ultimately found. Most importantly, because there is a single asserted patent and the IPR covers all Asserted Claims, the IPR will inevitably narrow the issues in this case, and likely extinguish the case altogether.

## I. NATURE AND STAGE OF THE PROCEEDINGS

On March 20, 2014, Copy Protection filed suit against Netflix. (D.I. 1). The Complaint was served on Netflix on March 24, 2014 (D.I. 4) and alleged that Netflix infringes claims 1, 6-8, 10, and 18 of the '649 patent. (D.I. 1). The Court entered its initial Scheduling Order on September 22, 2014. (D.I. 13). Copy Protection served Initial Infringement Contentions on October 8, 2014, over six months after the case was initially filed, and expanded the list of Asserted Claims to include claims 1-14, 16-20, and 22-26. While Copy Protection purported to accuse a wide array of what it refers to as implementations of Netflix's streaming video services, it provided only a single claim chart covering only one such implementation, an approach that

did not comply with Section 8(a) and 8(c) of the Scheduling Order. In response to Netflix's assertion that the Initial Infringement Contentions did not comply with the Scheduling Order or provide adequate notice of Copy Protection's infringement theories, Copy Protection served an updated set of Infringement Contentions on December 19, 2014, nine months after service of its Complaint.

On March 23, 2015, Netflix filed an IPR petition with the PTO seeking to cancel all Asserted Claims of the '649 patent in addition to unasserted claim 21. (Petition for *Inter Partes* Review of U.S. Patent No. 7,079,649, Case No. IPR2015-00921). As outlined in the petition, each of the challenged claims is invalid as anticipated and/or rendered obvious by prior art which was not considered by the PTO during the original examination of the '649 patent, as well as by admissions on the face of the '649 patent that the key claim elements were well known in the prior art.

On April 1, 2015, Netflix and Copy Protection met and conferred to determine whether Copy Protection would agree to a stay pending the outcome of the IPR, and Copy Protection indicated that it would not agree to a stay. On April 13, Netflix again contacted Copy Protection to see if it would agree to a stay, and Copy Protection indicated its continued objection. Netflix filed the instant motion on April 24, 2014.

Although the case was filed a little over a year ago, procedurally it is at a very early stage. As noted above, Copy Protection did not provide substantive Initial Infringement Contentions until nine months after it filed the complaint. The parties have begun initial document discovery, but the fact discovery period does not close until September 18, 2015. No depositions have been taken. Disputed claim construction terms were exchanged only last week, on April 17, and the claim construction hearing is nearly three months away, on July 20, 2015.

Trial will not be held until October 11, 2016. Absent extenuating circumstances, the PTO will have issued a final decision on Netflix's IPR before then.[1]

## II. SUMMARY OF THE ARGUMENT

In evaluating the merits of a motion to stay, three factors should be considered: (1) whether a stay will simplify the issues to be litigated; (2) whether a stay will unduly prejudice the non-moving party; and (3) whether the stage of the case cuts against a stay. All three factors favor a stay here.

The IPR will simplify (if not extinguish) this case, regardless of how it ends. If the challenged claims are cancelled by the PTO, the case will be over because all Asserted Claims have been challenged. If the challenged claims are amended, a stay will give the parties, their experts, and the Court the opportunity to consider those claim amendments before engaging in activities such as claim construction, summary judgment, drafting of expert reports, and trial. Even if all of the challenged claims are confirmed, a stay will allow the Court to consider the PTO's expert analysis of the '649 patent when this case moves forward.

A stay will not unduly prejudice Copy Protection. Copy Protection is a non-practicing entity that does not make any products or otherwise compete with Netflix. Copy Protection can therefore be adequately compensated through money damages if the challenged claims survive the IPR and Netflix is later found to be liable for infringement.

---

[1] The PTO will likely reach a final decision on the IPR before the October 11, 2016 trial date. The PTO is required to decide whether to institute an IPR not later than 6 months after a filing date is accorded to the petition. See 35 U.S. Code § 314(b)(1) (decision on institution must be made not later than three months after patent owner response) and 37 C.F.R. § 42.107(b) (patent owner's response must be filed no later than three months after notice of filing date accorded to petition). Netflix's IPR was accorded a filing date on April 3, 2015 (Notice of Filing Date Accorded, Case IPR2015-00921, Ex. A), and therefore the PTO will issue its decision on institution on or before October 3, 2015. The PTO must then administer the IPR such that pendency after institution is normally no more than one year. 37 C.F.R. § 42.100. Thus, if Netflix's IPR is instituted, the PTO will likely issue its final decision on or before October 3, 2016, prior to the trial date currently set for this case.

Finally, this case is at a relatively early stage. As noted above, for all but one of the accused implementations, Copy Protection served Infringement Contention charts less than one month ago. The parties have not taken any depositions and approximately six months remain before the close of fact discovery. The claim construction process is just beginning, and nearly eighteen months remain before the scheduled trial date.

### III.   ARGUMENT

#### A.   IPR Proceedings Provide A Rapid, Streamlined Process To Assess Patent Validity

IPR proceedings were created as a "faster, less costly alternative to civil litigation to challenge patents." 157 Cong. Rec. S952 (daily ed. Feb. 28, 2011). The PTO will initiate an IPR when "there is a reasonable likelihood that the petitioner will prevail with respect to at least 1 claim of the claims challenged in the petition." 35 U.S.C. § 314(a). All Asserted Claims have been challenged in the IPR, most of those on multiple grounds.

#### B.   Copy Protection's Only Business Is To Monetize Patents

Copy Protection is a wholly owned subsidiary of Wi-Lan Inc. ("WiLan"), which "manages intellectual property and licenses the [intellectual property] to corporations." (<http://wilan.com/company/overview/default.aspx>, Ex. B). Copy Protection and WiLan have no commercial business, make no products, and do not compete in any marketplace, including any marketplace with Netflix. Rather, WiLan's entire business is to "generat[e] annual revenue from licensing intellectual property...." (< http://wilan.com/investors/investor-relations/default.aspx>, Ex. C). WiLan acknowledges that its companies use "litigation as a means to motivate a potential licensee to negotiate a license." (WiLan 2014 Annual Report, Ex. D, at 16). WiLan subsidiary Copy Protection is doing exactly that here: using litigation to generate revenue.

4

### C.     All Relevant Factors Favor Staying This Litigation

This Court may stay litigation in its sound discretion as part of its "inherent power to conserve judicial resources by controlling its own docket." *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). It is well settled that "this authority extends to patent cases in which a PTO review has been requested." *AIP Acquisition LLC v. Level 3 Comm'ns, LLC*, C.A. No. 12-617-GMS, D.I. 63 at 4 (D. Del. Jan. 9, 2014) (Ex. E) (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)). In considering a stay, the Court weights three factors: "(1) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the non-moving party; (2) whether a stay will simplify the issues for trial; and (3) whether discovery is complete and a trial date set." *Softview LLC v. Apple Inc., et al.*, C.A. No. 12-989-LPS, 2013 WL4757831, at *1 (D. Del. Sept. 4, 2013) (citing *Cephalon, Inc. v. Impax Labs., Inc.*, C.A. No. 11-1152-SLR, 2012 WL 3867568, at *2 (D. Del. Sept. 6, 2012)). In this case, each of these factors favors a stay.

#### 1.     A Stay Will Simplify The Issues

Staying this case pending the conclusion of the IPR will simplify the issues, and because it covers all Asserted Claims, it has the potential to extinguish the case altogether. There are only three possible outcomes of an IPR, and a stay is beneficial and warranted regardless of which outcome occurs here.

The first outcome is that all of the claims challenged in the IPR will be cancelled. If all challenged claims are cancelled, the case will be over. *Softview*, 2013 WL4757831, at *1 (noting that if all asserted claims are found invalid, "the litigation would be 'simplified' because it would be concluded").

And even if only some of the Asserted Claims are found invalid (the second possible

outcome), "that finding would reduce the number of issues left to be litigated in this case," thereby simplifying the case and conserving the parties' and the Court's resources. *Id*. In the event Copy Protection was to subsequently assert the one unchallenged claim of the '649 patent against Netflix, the case will nonetheless have been simplified by the exclusion from this case of the twenty-five claims that were cancelled in the IPR.

The final possibility is that all of the Asserted Claims will survive the IPR. But even if that happens, staying the case now will simplify the issues due to the estoppel effect on Netflix. *Id*.; *see also* 35 U.S.C. § 315(e)(2) (noting that if the PTO grants a petition for IPR, the petitioner is estopped from asserting invalidity in a civil action on "any ground that the petitioner raised or reasonably could have raised during that inter partes review"). And staying the case now would allow the Court, once the case is resumed, to benefit from the PTO's analysis of the validity of the Asserted Claims. *Princeton Digital Image Corp. v. Konami Digital Ent't Inc*, C.A. No. 12-1461-LPS-CJB, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014) (noting that the "insight that the Court could gain from the PTO's review process" would simplify the litigation).

A stay also makes sense because the permissible scope of Netflix's invalidity case will not be known until the conclusion of the IPR. If the PTO issues a final written decision in the IPR, regardless of what that decision is, Netflix will be estopped from making invalidity arguments on grounds upon which the PTO instituted. *See* 35 U.S.C. § 315(e)(2).

Thus, the simplification of issues factor supports a stay.

### 2. A Stay Will Not Unduly Prejudice Or Present A Tactical Disadvantage To Copy Protection

In determining whether undue prejudice to the non-moving party may result from a stay, the Court analyzes: (1) the timing of the request for review; (2) the timing of the request for stay; (3) the status of the review proceeding; and (4) the relationship of the parties. *Princeton*

6

*Digital Image*, 2014 WL 3819458, at *4.

        **(a)    Timing Favors A Stay**

Copy Protection served its Complaint on Netflix on March 24, 2014. Netflix timely filed its IPR petition on March 23, 2015. On April 1, 2015, Netflix and Copy Protection met and conferred to determine whether Copy Protection would agree to a stay pending the outcome of the IPRs, and Copy Protection indicated that it would not agree to such a stay. On April 13, Netflix again contacted Copy Protection to determine if it would agree to a stay, and Copy Protection indicated its continued objection. Netflix filed the instant motion on April 24, 2014.

At all times, Netflix acted diligently to ensure that its request for a stay would be before the Court in a timely fashion and while the case was still in its early stages. As noted, the Scheduling Order was entered in September of 2014, and three months later Copy Protection was still attempting to serve compliant Initial Infringement Contentions. In the meantime, Netflix had already conducted a lengthy prior art search, located qualified experts, and was developing its invalidity positions. On December 19, 2014, Netflix served an interrogatory and document request asking Copy Protection to identify the conception date it intended to rely on for the '649 patent, as well as any documents supporting that date. Netflix sought this information because it discovered several prior art references disclosing the limitations of the Asserted Claims, and some of those references were prior art to the '649 patent under pre-AIA 35 U.S.C. § 102(e). For patents filed prior to the AIA, a patent owner can potentially swear behind a 102(e) reference by proving a conception date earlier than the filing date of the prior art reference. Thus, Netflix sought Copy Protection's claimed conception date before making a final selection on which prior art references to include in the IPR.

In response, Copy Protection refused to provide a firm conception date, stating only that

7

the '649 patent was conceived and reduced to practice "at least as early as November 19, 1996.["]2

Copy Protection improperly avoided providing a date certain despite its counsel representing the named inventors of the '649 patent for purposes of this litigation and having over nine months to search for records establishing any earlier priority date. Despite two follow-up letters on February 29, 2015 and March 18, 2015, Copy Protection never provided a firm conception date during the one-year statutory period during which Netflix could file an IPR.

Netflix waited as long as it could for Copy Protection to comply with its discovery obligations and identify a conception date, which only it could identify, but was forced by statute to file its IPR by the March 24, 2015 deadline. Then, conveniently, during a discovery meet and confer teleconference a mere two weeks after that deadline, Copy Protection notified Netflix that it had no evidence supporting a conception date earlier than the priority date on the face of the patent and therefore expected to rely on that priority date (March 27, 1997), not the November 19, 1996 date it claimed in its discovery responses.

Nevertheless, based on the schedule in this case, Netflix's IPR and this motion were filed swiftly enough that all of the benefits of a stay can be realized. *See Princeton Digital Image*, 2014 WL 3819458, at *4 (granting stay after the Rule 16 conference had been held and scheduling orders had been issued, but where "further Markman hearings, the completion of expert discovery and the filing of case dispositive motions are all still many months to well over a year away"); *see also Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc*, 2014 U.S. Dist. LEXIS 47430, at *8 (D. Del. Apr. 7, 2014) (granting a stay where IPRs were filed between eight and twelve months after service of the complaint, in part because "the IPR petitions were filed before any significant occurrences and proceedings in the instant cases"). As was the

---

[2] On its face, the '649 patent claims priority to a European patent application filed March 27, 1997.

8

situation in *Princeton Digital*, the Markman hearing in this case is several months away (July 20, 2015), nearly five months remain before the end of the discovery period (September 18, 2015), and approximately ten months remain before the dispositive motions deadline (March 3, 2016).

Even where cases have progressed much further, courts have found this factor to weigh in favor of a stay. *See PersonalWeb Technologies, LLC v. Facebook, Inc*, No. 5:13-CV-01356-EJD, 2014 WL 116340, at *3 (N.D. Cal. Jan. 13, 2014) (granting stay where a claim construction order had been issued and discovery was about to close, but where "a substantial portion of the work—expert discovery, summary judgment, pre-trial preparation, and trial itself—lies ahead"); *Air Vent, Inc. v. Owens Corning Corp*., No. 02:10-CV-01699, 2012 WL 1607145, at *3 (W.D. Pa. May 8, 2012) (concluding that this factor weighed in favor of a stay even though the case had been pending for 16 months because "there is more work ahead for the parties and the Court than behind the parties and the Court").

> **(b)** **The Relationship Between The Parties Favors A Stay Because Copy Protection Is A Non-Practicing Entity And Does Not Compete With Netflix**

Copy Protection is a non-practicing entity whose entire business is to "generat[e] annual revenue from licensing intellectual property...." (Ex. B at 1). The company does not make any products and does not compete with Netflix. Therefore, Copy Protection's damages, if any, "are purely monetary and can be accommodated by the award of interest if it ultimately prevails." *Princeton Digital Image*, 2014 WL 3819458, at *4; *see also In re Bear Creek Techs.*, C.A. No. 12-2344-GMS, 2013 WL 3789471, at *3 n.8 (D. Del. July 17, 2013) (finding that a stay would not cause undue prejudice because the non-practicing entity plaintiff could be compensated by money damages, including any appropriate interest accrued during the stay"). If Copy Protection ultimately prevails without having to amend the Asserted Claims in the IPR, it will still be able to collect damages accrued during the stay if infringement is found here. *Cirrex Sys. LLC v.*

9

*Verizon Servs. Corp.*, C.A. No. 13-921-GMS, D.I. 96 at 2 n.1 (D. Del. Oct. 1, 2014) (Ex. F) ("as a non-practicing entity, [plaintiff] may seek adequate redress for potential ongoing infringement during the length of the stay"); *Walker Digital v. Google Inc.*, C.A. No. 11-309-SLR, 2013 U.S. Dist. LEXIS 52176, at *7 (D. Del. Apr. 11, 2013) (concluding that, "because [plaintiff] is a non-practicing entity, any prejudice that may result from a stay can be remedied by monetary damages").

Thus a stay will not prejudice Copy Protection because all remedies will remain available to it. Moreover, a stay will provide necessary clarity regarding the scope of any damages to which Copy Protection might be awarded. If Copy Protection is required to amend the Asserted Claims in the IPR, damages will only be available for the period after those amendments, and only on claims that survive the IPR and amendment process, making it premature to move this case forward and toward determining infringement—much yet damages. *Fresenius USA, Inc. v. Baxter, Intern., Inc.*, 721 F.3d 1330, 1339 (Fed. Cir. 2013) (holding that "if the claim is amended during reexamination to render the claim valid, no suit can be maintained for the period prior to the validating amendment") (citing 35 U.S.C. § 307(b)).

Copy Protection also does not compete with Netflix, so it will suffer no harm in the market. Under these circumstances, a stay will not unduly prejudice Copy Protection.

    (c)  **A Stay Of Litigation Is Appropriate Upon The Filing Of An IPR**

Decisions in this District have granted motions to stay upon the filing, rather than institution, of IPRs. *SunPower Corp. v. Panelclaw Inc.*, C.A. No. 12-1633-GMS, D.I. 43 at 3 (D. Del. May 16, 2014) (Ex. G); *Cirrex*, C.A. No. 13-921-GMS, D.I. 96 at 2 n.1; *Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 U.S. Dist. LEXIS 92416, at *6-7 (D. Del. July 2, 2013); *Princeton Digital Image Corp.*, 2014 WL 3819458, at *19-20. Furthermore, the fact that

the IPR has not yet been instituted "cannot overcome the weight of th[e] other sub-factors." *See Neste Oil*, 2013 U.S. Dist. LEXIS 92416, at *11. In the five months remaining before the PTO's decision on institution, the Court and the parties will expend substantial resources on claim construction briefing, the *Markman* hearing, and discovery, including depositions. Staying the case for that period will avoid unnecessary expenditure of the Court's and parties' resources

Taken together, the prejudice-related factors support a stay.

### 3. The Early Stage Of The Litigation Favors A Stay

In considering a stay pending IPR, this Court has found that, "the benefits of staying a case in its early stages are considerable in that doing so advances judicial efficiency and potentially avoids expending both the parties' and court's resources on invalid claims." *SunPower*, C.A. No. 12-1633-GMS, D.I. 43 at 5. To determine whether the stage of the litigation is early enough to clearly support a stay, the Court considers: (1) whether discovery is complete and (2) whether a trial date has been set. *Id.*

Here, there can be no dispute that this case is in its infancy. Discovery has not been completed; indeed, it does not end until September 18, 2015. Neither party has taken a deposition and no expert discovery has been conducted. The claim construction hearing is not scheduled to take place until July 20, 2015. And while a trial date has been set, it is nearly eighteen months away, on October 11, 2016. If the IPR is instituted, a final decision will almost certainly issue before October 2016. This factor clearly supports a stay. *See Princeton Digital Image*, WL 3819458, at *3 (granting stay after the Rule 16 conference had been held and scheduling orders had been issued, but where "further *Markman* hearings, the completion of expert discovery and the filing of case dispositive motions are all still many months to well over a year away"); *see also AIP Acquisition*, C.A. No. 12-617-GMS, D.I. 63 at 6-7 (granting stay where discovery was not complete and trial was a year away).

11

**IV.     CONCLUSION**

A stay is warranted here because every factor favors a stay.  The IPR will simplify the issues before the Court, and potentially dispose of the case altogether.  A stay will not unduly prejudice Copy Protection because it does not compete with Netflix and it can be compensated with monetary damages if infringement is ultimately found.  Finally, because this case is still in its infancy, a stay advances judicial efficiency and avoids the unnecessary expenditure of resources to advance the case in the face of possible invalidation of the Asserted Claims.  For these reasons, the case should be stayed until the PTO decides whether to institute an IPR and, in the likely event that the PTO institutes IPR, until the conclusion of that proceeding.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: |  |
| Clay C. James<br>C. Matthew Rozier<br>Aaron S. Oakley<br>HOGAN LOVELLS US LLP<br>One Tabor Center, Suite 1500<br>1200 Seventeenth Street<br>Denver, CO 80202<br>Tel:  (303) 899 7300 | By:  */s/ Bindu A. Palapura*<br>Richard L. Horwitz (#2246)<br>David E. Moore (#3983)<br>Bindu A. Palapura (#5370)<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE  19801<br>Tel:  (302) 984-6000<br>rhorwitz@potteranderson.com |
| Melissa J. Baily<br>James D. Judah<br>Adam Botzenhart<br>QUINN EMANUEL URQUHART<br>  & SULLIVAN, LLP<br>50 California Street, 22nd Floor<br>San Francisco, CA  94111<br>Tel:  (415) 875-6600 | dmoore@potteranderson.com<br>bpalapura@potteranderson.com<br><br>*Attorneys for Defendant Netflix, Inc.* |

Dated:  April 24, 2015
1187833/ 41572