**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| COPY PROTECTION LLC, | : | |
| | : | C.A. No. 14-cv-365-LPS |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| NETFLIX, INC., | : | **DEMAND FOR JURY TRIAL** |
| | : | |
| Defendant(s). | : | |
| | x | |

## COPY PROTECTION LLC'S OPPOSITION TO
## NETFLIX INC.'S MOTION TO STAY PENDING *INTER PARTES* REVIEW

Date: May 11, 2015

Jonathan A. David (admitted *pro hac vice*)
Stephen F. Roth (admitted *pro hac vice*)
Aaron S. Eckenthal (admitted *pro hac vice*)
Maegan A. Fuller (admitted *pro hac vice*)
LERNER, DAVID, LITTENBERG,
  KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090
(908) 654-5000
(908) 654-7866 (Fax)
jdavid@ldlkm.com
sroth@ldlkm.com
aeckenthal@ldlkm.com
mfuller@ldlkm.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiff Copy Protection LLC*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.     INTRODUCTION .................................................................................................1

II.    STATEMENT OF FACTS ....................................................................................2

       A.     Procedural History ....................................................................................2

       B.     *Inter Partes* Review .................................................................................3

III.   ARGUMENT .........................................................................................................5

       A.     The Legal Standard ...................................................................................5

       B.     All Factors Considered By Courts Favor Denying A Stay .......................6

              1.     A Stay Would Cause Prejudice To Copy Protection
                     And Permit Netflix To Gain An Improper Tactical
                     Advantage .......................................................................................7

                     a.     The Requested *Inter Partes* Review And
                            Subsequent Appeals Can Last For Years ...........................7

                     b.     Copy Protection's Ability To Conduct Its Business
                            Will Be Impeded By A Stay ...............................................8

                     c.     A Stay Will Deny Copy Protection Its Chosen
                            Forum ................................................................................10

                     d.     Netflix Lacked Diligence In Filing Its Petition For
                            *Inter Partes* Review And Its Motion To Stay The
                            Case ...................................................................................10

              2.     Any Assertion That A Stay Will Simplify The
                     Issues Presented In This Case Is Merely Speculative ...............12

              3.     A Stay Is Improper At This Stage Of The Case .........................14

IV.    CONCLUSION ....................................................................................................17

i

# TABLE OF AUTHORITIES

Page(s)

CASES

*Cephalon, Inc. v. Impax Labs., Inc.*, No. 11-1152, 2012 U.S. Dist. LEXIS 126785
(D. Del. Sept. 6, 2012) ................................................................................................6

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*,
No. 13-1112 (E.D. Tex. Apr. 27, 2015) .......................................................................6

*Davol, Inc. v. Atrium Med. Corp.*,
No. 12-958, 2013 U.S. Dist. LEXIS 84533 (D. Del. June 17, 2013)...........................6

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
734 F. Supp. 656 (D. Del. 1990) ..............................................................................7, 8

*Gold v. Johns-Manville Sales Corp.*,
723 F.2d 1068 (3d Cir. 1983)......................................................................................7

*Holmes Grp., Inc. v. Vornado Air Circulation Sys.*,
535 U.S. 826 (2002)...................................................................................................10

*ImageVision.net, Inc. v. Internet Payment Exch., Inc.*,
No. 12-054, 2012 U.S. Dist. LEXIS 124979 (D. Del. Sept. 4, 2012)..................5, 17

*In re Cuzzo Speed Techs., LLC*,
778 F.3d 1271 (Fed. Cir. 2015)..................................................................................10

*Intellectual Ventures I LLC v. Xilinx, Inc.*,
No. 10-1065, 2014 U.S. Dist. LEXIS 33687 (D. Del. Mar. 5, 2014) ..................7, 10

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)..................................................................................................5, 7

*Life Techs. Corp. v. Illumina, Inc.*,
No. 09-706, 2010 U.S. Dist. LEXIS 55623 (D. Del. June 7, 2010)............................7

*McRo, Inc. v. Bethesda Softworks LLC*,
Nos. 12-1509, -1510, -1513, -1517, -1519, 2014 U.S. Dist. LEXIS 60313
(D. Del. May 1, 2014)..................................................................................................6

*Personalized User Model, LLC v. Google, Inc.*,
No. 09-525, 2012 U.S. Dist. LEXIS 155815. (D. Del. Oct. 31, 2012) ......................9

*Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*,
No. 12-1461, 2014 U.S. Dist. LEXIS 61555 (D. Del. Jan. 15, 2014).......................13

*SecureBuy, LLC v. Cardinal Commerce Corp.*,
　　No. 13-1792, 2014 U.S. Dist. LEXIS 37324 (D. Del. Mar. 21, 2014) ...................................13

*SenoRx, Inc. v. Hologic, Inc.*,
　　No. 12-173, 2013 U.S. Dist. LEXIS 008044 (D. Del. Jan. 11, 2013).......................................6

*Softview LLC v. Apple Inc.*,
　　No. 10-389, 2012 U.S. Dist. LEXIS 104677 (D. Del. July 26, 2012) ...............................3, 10

*Softview LLC v. Apple Inc.*,
　　No. 12-989, 2013 U.S. Dist. LEXIS 125900 (D. Del. Sept. 4, 2013)...................................3, 6

*TruePosition, Inc. v. Polaris Wireless, Inc.*,
　　No. 12-646, 2013 U.S. Dist. LEXIS 150764 (D. Del. Oct. 21, 2013) ...................................10

*Viskase Corp v. Am. Nat'l Can Co.*,
　　261 F.3d 1316 (Fed. Cir. 2001)...............................................................................................5

*Walker Digital, LLC v. Google, Inc.*,
　　No. 11-318, 2014 U.S. Dist. LEXIS 85539 (D. Del. June 24, 2014).............................8, 9, 13

## STATUTES, RULES & OTHER AUTHORITIES

35 U.S.C. § 102......................................................................................................................12

35 U.S.C. § 103......................................................................................................................12

35 U.S.C. § 112......................................................................................................................13

35 U.S.C. § 311(b) .................................................................................................................12

35 U.S.C. § 314........................................................................................................................3

35 U.S.C. § 314(b)(1) ...........................................................................................................4, 7

35 U.S.C. § 316(a)(11)..............................................................................................................4

37 C.F.R. § 42.107(b) ...........................................................................................................4, 7

I.      **INTRODUCTION**

Plaintiff Copy Protection LLC ("Copy Protection") respectfully submits this brief in opposition to Defendant Netflix, Inc.'s ("Netflix") Motion to Stay Pending *Inter Partes* Review ("Stay Motion"). (D.I. 46.)

After discovery was well underway, and on the last possible day to do so, Netflix filed a petition for *Inter Partes* Review ("IPR") with the United States Patent and Trademark Office ("PTO") to challenge the validity of U.S. Patent No. 7,079,649 ("the '649 Patent"). However, Netflix's Stay Motion simply puts the cart before the horse because the Patent Trial and Appeal Board ("PTAB") has not decided to institute Netflix's requested IPR and may decline to do so. As such, Netflix's Stay Motion is premature. It is unlikely the PTAB will decide whether to initiate an IPR of the '649 Patent until October 2015 — after the close of fact discovery in this case. As such, this and other factors favor denying Netflix's requested stay.

A stay of this case would cause severe prejudice to Copy Protection because it will delay resolution of this case, cause Copy Protection economic harm, and deprive Copy Protection of its chosen forum — the United States District Court.

Additionally, a stay of this case will not undisputedly serve to simplify the issues involved as it is merely speculative at this point to know whether the PTAB will initiate an IPR and, if so, on what grounds. But, even if an IPR is initiated, it will not resolve all of the issues raised in this case, including issues related to infringement, damages, and validity that Netflix is unable to raise through an IPR.

Moreover, contrary to the assertion by Netflix, this case is not in its infancy. Discovery is well underway. The case has been pending for well over a year, and both parties (and the Court) have spent considerable time and resources negotiating a Scheduling Order, Protective Order, and complying with the patent disclosures of this Court. Both parties have also served

and responded to written discovery, and both parties are working to schedule upcoming depositions.

For all of these reasons, Copy Protection respectfully requests that the Court deny Netflix's Stay Motion.

## II.   STATEMENT OF FACTS

### A.   Procedural History

Copy Protection filed this case of patent infringement against Netflix more than one year ago, on March 20, 2014.  (D.I. 1.)  Netflix filed its answer on May 14, 2014.  (D.I. 6.)  The parties negotiated and ultimately proposed a Scheduling Order on July 11, 2014, under which the parties agreed to all required deadlines but contested a determination related to e-mail production.  (D.I. 12.)  As for the e-mail issue, the Court sided with Copy Protection and entered a Scheduling Order on September 22, 2014.  (D.I. 13.)

On October 8, 2014, Copy Protection served its Initial Infringement Contentions and identified the Accused Products.  (D.I. 15.)  That sparked a debate between the parties regarding the Accused Products ("Netflix Implementations").  At Netflix's request, Copy Protection agreed to further clarify the scope of Netflix Implementations.  On November 21, 2014, Netflix produced core technical documents and source code, but unilaterally limited its production to the only Netflix Implementation it believed to be at issue, instead of the scope asserted by Copy Protection in its Infringement Contentions.  (D.I. 23.)  On December 19, 2014, Copy Protection served its initial claim chart directed to the only Netflix Implementation for which Netflix produced core technical documents and source code.  (D.I. 29.)

On that same day, December 19, 2014, Netflix served Document Requests and Interrogatories on Copy Protection.  (D.I. 30.)  On January 2, 2015, Copy Protection served Document Demands and Interrogatories.  (D.I. 32.)  On January 15, 2015, Netflix served another

set of Document Demands and Interrogatories.  (D.I. 35.)  On February 19, 2015, Netflix served its Initial Invalidity Contentions.  (D.I. 39.)

In an effort to resolve the dispute related to the Netflix Implementations, Copy Protection agreed to produce additional claim charts, based on publicly available information, directed to the other Netflix Implementations at issue.  Those charts were provided to Netflix on March 23, 2015.  The parties have also met and conferred several times to discuss various discovery disputes and are attempting to resolve those disputes without the need for Court intervention.

The case is now at the point where the procedures leading up to the *Markman* hearing are well underway.  The parties exchanged claim terms for construction on March 23, 2015, and have met and conferred in several lengthy sessions to discuss the terms that require construction and their respective definitions.  The parties prepared and filed a joint claim construction chart on April 17, 2015.  (D.I. 44.)  Opening claim construction briefs are due in less than two weeks, on May 22, 2015, with responsive briefs due on June 22, 2015.  Therefore, this motion will be fully briefed only days before opening claim construction briefs are due.

Under the Scheduling Order entered in this case, fact discovery is set to close on September 18, 2015.  (D.I. 13.)  Expert discovery will begin (with the exchange of opening expert reports) on October 28, 2015.  (*Id.*)  Dispositive motions are set to be filed by March 3, 2016, and trial is set to occur on October 11, 2016.  (*Id.*)

**B.**     *Inter Partes* **Review**

For reasons of its own choosing, Netflix delayed filing its petition for IPR until the very last day it was permitted ⸺ on March 23, 2015.  (D.I. 47; Netflix Br. Exh. A.)  The PTAB will only grant the petition if it is persuaded that Netflix has a reasonable likelihood of prevailing with respect to at least one challenged patent claim.  35 U.S.C. § 314.  At the present time, the petition has not been granted, and it is far from certain that Netflix's petition will ever be granted.

Once a petition is filed, the patent owner may file a preliminary response within three months of receiving notice of a petition's filing date.  37 C.F.R. § 42.107(b).  The PTAB has up to six months from the filing date to decide whether to institute the IPR.  35 U.S.C. § 314(b)(1).  If the IPR is instituted, the AIA requires the PTAB to issue a final written decision within one year of the grant of the petition.  35 U.S.C. § 316(a)(11).  This deadline may be extended by not more than six months for good cause shown.  *Id.*

The below chart shows the timing of the IPR initiation and final written decision and how those dates fit with the Scheduling Order entered in this case.



As can be seen, the PTAB will not decide to initiate the IPR until after the close of fact discovery in this case. However, if the proceeding is initiated, a final written decision will not be required to issue until <u>only days before trial</u>. And if the IPR is extended for good cause shown (up to six months), the final written decision will actually issue <u>after</u> trial in this case.

Even if a final written decision issues in the few days before the trial, such still does not warrant a stay of this case. The effect of a final written decision at this point is comparable to a summary judgment decision on validity. The only difference being that the final written decision would bar Netflix from presenting any arguments it raised or could have raised in the IPR.

In its brief, Netflix complains that it needed more information from Copy Protection to file its IPR earlier. Netflix contends that Copy Protection delayed in providing certain documents to it, namely documents related to conception and reduction to practice. However, Copy Protection was collecting such documents, and at no point did Netflix state that there was any special urgency in obtaining these documents to file an IPR, nor move to obtain the documents more quickly than the normal course discovery proceeds in most cases.[1] Netflix filed its motion for a stay on April 24, 2015. (D.I. 46.)

III.    **ARGUMENT**

    A.    **The Legal Standard**

It is well settled law that the Court has the discretion to deny a motion to stay under the present circumstances. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Viskase Corp v. Am. Nat'l Can Co.,* 261 F.3d 1316 (Fed. Cir. 2001) (finding that a "court is not required to stay a judicial resolution in view of" reexaminations by the USPTO); *ImageVision.net, Inc. v. Internet Payment Exch., Inc.*, No. 12-054, 2012 U.S. Dist. LEXIS 124979, at *9 (D. Del. Sept. 4, 2012)

---

[1] For example, Netflix's own production is woefully incomplete, yet the parties are themselves working out the production without blame or prejudice.

(stating "courts do not uniformly grant stays as a matter of course when a reexamination request is filed with the PTO"), *aff'd in part, rev'd in part on other grounds*, 2012 U.S. Dist. LEXIS 163234 (D. Del. Nov. 15, 2012) (affirming denial of stay).

The factors courts consider when deciding whether to stay a case pending IPR are similar to those used when deciding whether to stay a case pending reexamination of a patent.  Those three factors are: "(1) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the non-moving party; (2) whether a stay will simplify the issues for trial; and (3) whether discovery is complete and a trial date set."  *Softview LLC v. Apple Inc.*, Nos. 12-989, 10-389, 2013 U.S. Dist. LEXIS 125900, at *7-8 (D. Del. Sept. 4, 2013) (quoting *Cephalon, Inc. v. Impax Labs., Inc.*, No. 11-1152, 2012 U.S. Dist. LEXIS 126785, at *6 (D. Del. Sept. 6, 2012)). Contrary to the assertions put forth by Netflix, these three factors weigh against granting Netflix's Stay Motion.

### B.  <u>All Factors Considered By Courts Favor Denying A Stay</u>

Netflix incorrectly suggests that a stay in the present circumstance is automatic or, at the very least, routinely granted.  However, such is not the case, and, in fact, stays are routinely denied when a movant's request for IPR has not yet been granted.  *See e.g., SenoRx, Inc. v. Hologic, Inc.*, No. 12-173, 2013 U.S. Dist. LEXIS 008044 (D. Del. Jan. 11, 2013); *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, No. 13-1112 (E.D. Tex. Apr. 27, 2015 (order denying motion to stay)); *Davol, Inc. v. Atrium Med. Corp.*, No. 12-958, 2013 U.S. Dist. LEXIS 84533 (D. Del. June 17, 2013); *McRo, Inc. v. Bethesda Softworks LLC*, Nos. 12-1509, -1510, -1513, -1517, -1519, 2014 U.S. Dist. LEXIS 60313 (D. Del. May 1, 2014). Here, Netflix's requested IPR has not been granted by the PTAB and may never be.  Any decision regarding initiation of the IPR is unlikely to be rendered until after the close of fact

discovery.  Given the circumstances regarding the timing of the PTAB's decision to initiate, and the speculative nature of whether the IPR will be instituted and on what grounds, all factors favor a denial of Netflix's request for a stay.

### 1.      A Stay Would Cause Prejudice To Copy Protection And Permit Netflix To Gain An Improper Tactical Advantage

Netflix must show "a clear case of hardship or inequity" in being made to proceed if there is even a "fair possibility" that the requested stay will harm Copy Protection.  *See Landis*, 299 U.S. at 254-55; *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983); *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990) (stating "the Court must consider whether there is even a fair possibility that the stay would work damage on another party," and, if so, the movant must show "a clear case of hardship or inequity before the Court can enter a stay order" (internal quotation marks omitted)).

### a.      The Requested *Inter Partes* Review And Subsequent Appeals Can Last For Years

It is well recognized by courts that extreme prejudice can result from "the indefinite nature" of a stay during a reexamination proceeding.  *Life Techs. Corp. v. Illumina, Inc.*, No. 09-706, 2010 U.S. Dist. LEXIS 55623, at *8-9 (D. Del. June 7, 2010); *see also Intellectual Ventures I LLC v. Xilinx, Inc.*, No. 10-1065, 2014 U.S. Dist. LEXIS 33687, at *4 (D. Del. Mar. 5, 2014) (denying a motion to stay because "[a]n indefinite stay" for the completion of reexamination proceedings would provide "Defendants [with] a clear and unwarranted tactical advantage").  Similarly, the stay requested in the case of an IPR is not much different.  For example, as it stands today, the PTAB has not yet granted Netflix's petition to institute the IPR. Copy Protection has three months from Netflix's filing date to submit a preliminary response.  37 C.F.R. § 42.107(b).  Then, the PTAB has three additional months to determine if the IPR should be instituted.  35 U.S.C. § 314(b)(1).  Even though the proceeding can be completed in one year

from institution, if the PTAB extends this period by up to the six-month extension it is permitted, the IPR, if initiated, can last until April 2017. At that point, if appeals are taken with the Federal Circuit, the proceeding could last an additional two years.

As it stands with the current Scheduling Order, fact discovery is set to close on September 18, 2015. The PTAB is not required to decide whether to institute the requested IPR until October 3, 2015 — weeks after the close of fact discovery. Indeed, it remains uncertain whether the PTAB will even decide to institute the IPR and on what specific grounds it may do so. Moreover, trial in this case is scheduled for October 11, 2016. If the PTAB institutes the IPR, a final decision (barring any extensions for good cause shown) will issue by October 3, 2016, only days before trial. And if the proceeding is extended for good cause shown by even a short time, the final written decision would issue after trial of this case. That does not even factor in time for any appeal that might be taken. And this Court has recognized that a delay in the litigation that causes a trial date to be missed will result in prejudice. *Dentsply Int'l*, 734 F. Supp. at 658 ("Any delay in the litigation of 89-167 will forestall the trial date agreed upon by Dentsply and Kerr and result in prejudice to Dentsply."). As such, if the IPR is instituted, it may take much longer to resolve than if this case were permitted to proceed to trial.

Thus, efficiency in resolving this dispute judicially favors a denial of Netflix's Stay Motion.

### b. Copy Protection's Ability To Conduct Its Business Will Be Impeded By A Stay

Netflix also suggests that because Copy Protection has no commercial business, makes no products, and is not a competitor to Netflix, no prejudice can result from a stay. However, this ignores prior holdings by this Court. For example, in *Walker Digital, LLC v. Google, Inc.*,

No. 11-318, 2014 U.S. Dist. LEXIS 85539, at *3-4 (D. Del. June 24, 2014) the court held that a

nonpracticing entity can suffer prejudice.  The court stated:

> The third factor, undue prejudice to the non-moving party, also disfavors a stay. Although it is true that Plaintiff Walker Digital (Walker) does not actively practice the patents and, therefore, does not compete with Google, it is also true that the longer Google is allowed to engage in allegedly infringing activity, the lower the value of the patents becomes as licensing assets.

*Id.* at *3-4.  The absence of competition does not compel a stay.  *See Personalized User Model,*

*LLC v. Google, Inc.*, No. 09-525, 2012 U.S. Dist. LEXIS 155815. at *6-7 (D. Del. Oct. 31, 2012)

(denying a stay even though the parties are not direct competitors).

Like any patent owner, the ability of Copy Protection to grant licenses to its technology

depends upon its ability to enforce its patent and protect the market for its licensees by excluding

infringers.[2]  Copy Protection uses litigation as a last resort and would much rather settle disputes

outside of litigation.  Prior to filing this case, Copy Protection made an effort to license the

'649 Patent to Netflix.  Netflix refused to even discuss that possibility.  Thus, the fact that Copy

Protection was forced to pursue its rights through litigation is Netflix's own doing.

A stay of this case would only serve to hamper Copy Protection's ability to license its

technology.  Essentially, if this case were stayed (and the IPR granted), it would amount to a

royalty-free license for several years until the IPR concludes and after all appeals have been

exhausted.  Such would not only harm Copy Protection and prevent it from conducting its

business of licensing its technology, but it would put it at a severe disadvantage that one of the

top video streaming companies has a royalty-free license to critical technology.

---

[2] Netflix also incorrectly implies that WiLan is part of this litigation and devotes three exhibits in its opening brief to this point.  (*See* Exhs. B-D (D.I. 48).)  Even though WiLan is Copy Protection's parent entity, it does not own the '649 Patent and has no rights to license the '649 Patent.

### c. A Stay Will Deny Copy Protection Its Chosen Forum

A plaintiff has the ability to have its cause of action heard in the forum of its choice. *Holmes Grp., Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 831 (2002). This Court has also recognized that the grant of a stay would serve to deny the plaintiff of its forum choice. *See Softview LLC v. Apple Inc.*, No. 10-389, 2012 U.S. Dist. LEXIS 104677, at *13 (D. Del. July 26, 2012) ("granting a stay would unduly prejudice [Plaintiff] by denying [Plaintiff] of its chosen forum, thereby providing Defendants with a clear and unwarranted tactical advantage").

In the present case, Copy Protection chose to file this litigation, in this district, to resolve its claims that Netflix infringes the '649 Patent. Not only is Copy Protection's action meant to deal with the infringement of the '649 Patent, but also any potential validity challenges to it. Different standards apply to claim interpretation for purposes of validity challenges in court as compared to IPR. *In re Cuzzo Speed Techs., LLC*, 778 F.3d 1271, 1281 (Fed. Cir. 2015) (holding that during an IPR the PTAB uses the "broadest reasonable interpretation" standard). As described above, the grant of a stay in this case has the potential to be indeterminate, which would result in substantial prejudice to Copy Protection. A stay would deprive Copy Protection of any federal court forum to resolve its dispute that it chose to litigate in an effort to enforce its patent. *Intellectual Ventures I*, 2014 U.S. Dist. LEXIS 33687, at *6.

### d. Netflix Lacked Diligence In Filing Its Petition For *Inter Partes* Review And Its Motion To Stay The Case

It should also be noted that Netflix chose to wait a full year after this litigation was instituted before it filed its request for IPR. This Court has previously held that "[t]he more diligent a party is in seeking *inter partes* [sic] review, the less likely its petition is prejudicial to the non-movant." *TruePosition, Inc. v. Polaris Wireless, Inc.*, No. 12-646, 2013 U.S. Dist. LEXIS 150764, at *18 (D. Del. Oct. 21, 2013), *report and recommendation adopted*, 2013

U.S. Dist. LEXIS 160996 (D. Del. Nov. 12, 2013).  Netflix's decision to delay filing its request clearly demonstrates a lack of diligence that gives rise to prejudice in this instance, especially given the stage of this litigation.

Netflix would have this Court believe that the reason it lacked diligence and delayed filing its request for IPR until the very last day was Copy Protection's failure to provide conception and reduction to practice information in response to Netflix's discovery requests, which prevented Netflix from knowing what references were prior art.  This is simply not true. Copy Protection has always timely met its discovery obligations.

As Netflix points out, the Scheduling Order was entered in September 2014.  Yet Netflix chose to wait until December 2014 to first serve requests for information related to conception and reduction to practice.  Copy Protection had no obligation to provide this information before this request.  Indeed, in response to Netflix's request, Copy Protection timely produced a journal publication in which the inventors described their invention.  It was anticipated that drafts and/or other documents related to that publication existed that would document an earlier conception and/or reduction to practice date.

Copy Protection was diligent in its investigation for additional documents to establish an earlier priority date and coordinated a search with the named inventors, who reside in the United Kingdom.  Copy Protection apprised Netflix of this search.  The inventors took time to do their own investigation due to the age of the documents and the complexity in accessing old hard drives believed to contain the information.  Once their search concluded and they reported back to Copy Protection, it was concluded that no additional documents existed, and Copy Protection would be required to rely on the filing date of the patent for its priority date.  Copy Protection

notified Netflix as soon as this was determined in full compliance with its ongoing discovery obligations.

Netflix, on the other hand, has not fully complied with its discovery obligations, both under the Court's Scheduling Order and in response to Copy Protection's written discovery. Netflix has failed to produce core technical documents for all Netflix Implementations at issue in this case and has not provided even the most basic information such as document retention policies. Instead, Netflix simply tries to transform its own discovery deficiencies to an argument that discovery is in its infancy.

### 2. Any Assertion That A Stay Will Simplify The Issues Presented In This Case Is Merely Speculative

Netflix asserts that any outcome resulting from its petition for IPR would simplify the case and, thus, warrant a stay. This incorrectly and prematurely assumes that the IPR will be instituted by the PTAB. Such an argument rests on pure speculation because the PTAB has not yet decided to institute the IPR and may never do so.

It is not a foregone conclusion that the petition for IPR will even be instituted. While the PTAB may institute an IPR, there is also a chance that the PTAB will deny the petition in its entirety. There is also the possibility that the PTAB will institute the IPR on less than all of the challenged claims or less than all of the requested grounds. And if the PTAB does institute an IPR, it will not do so until after the close of fact discovery. Regardless, at this point, it is nothing short of speculation as to whether the IPR will be instituted and under what circumstances.

But, even if its request for IPR were instituted, which it has yet to be, it will only be limited to patentability of the claims raised under 35 U.S.C. §§ 102 or 103 based only on "patents or printed publications." 35 U.S.C. § 311(b). That means issues related to infringement and damages will require litigation to resolve, as well as common defenses such as laches, which

Netflix raised in its answer.  There will even be some validity issues to decide during litigation because not all validity issues can be resolved during IPR, including those that the PTAB decides to not consider during the IPR and those related to 35 U.S.C. § 112.

When the scope of the issues in need of resolution through litigation exceeds those being examined during the IPR, it cuts against a finding that the IPR will overall simplify the issues of the case.  *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, No. 12-1461, 2014 U.S. Dist. LEXIS 61555 (D. Del. Jan. 15, 2014).  Here, it remains unclear as to the extent of validity (which claim(s) and the specific challenges) the IPR will even address because the petition has not been instituted.  There remain many other issues besides the few validity issues that Netflix seeks to address through its IPR that will still require litigation, including additional validity issues that cannot be addressed through the IPR.  When the remainder of issues left to address by the Court exceeds those that can be resolved by the PTAB through IPR, a finding against a stay should result.  *SecureBuy, LLC v. Cardinal Commerce Corp.*, No. 13-1792, 2014 U.S. Dist. LEXIS 37324, at *3 (D. Del. Mar. 21, 2014) ("given that not even all invalidity defenses are part of the CBM request (and infringement, of course, is also not part of that request), the simplification factor does not favor a stay").

Even though the possibility remains that the PTAB will reject Netflix's petition for IPR (in whole or in part), granting a stay will only serve to add to Copy Protection's prejudice because it will delay this case.  Although in such circumstances a stay may seem short because the PTAB will determine whether or not to institute the IPR by the beginning of October, a stay of that length will not only fail to simplify any issues involved in this case, but it will add to Copy Protection's prejudice to license its patent.  As pointed out above, the Court's decision in *Walker Digital* demonstrates that time is important for a party that relies on licensing of its

patent.  Thus, Netflix cannot argue that in the event the PTAB eventually decides not to institute the IPR, such a short stay is harmless to Copy Protection.

If this case is allowed to move forward, at least until the PTAB decides whether or not to institute the IPR, fact discovery will be complete.  If the PTAB then decides to institute the IPR, Netflix's request for a stay can be revisited.  At that point, any decision related to a stay and the issues involved will be much less speculative.

At bottom, Netflix created this timing problem by waiting to file its IPR and then prematurely filing its Stay Motion before a decision to initiate its IPR issues by the PTAB.  As such, a stay at this point will not serve to simplify issues because of its speculative nature, and Netflix's Stay Motion should be denied.

### 3.       A Stay Is Improper At This Stage Of The Case

Netflix incorrectly asserts that "this case is in its infancy" because discovery is just beginning, and a claim construction hearing is not scheduled until July 20, 2015.  What Netflix fails to chronicle is all of the time and effort expended by each party and this Court so far in dealing with a Scheduling Order, Protective Order, and disclosures for patent cases mandated by the rules of this Court.  Discovery is well underway, the claim construction process is underway, and a trial date is already set.  Netflix also conveniently fails to apprise the Court as to the reason why discovery has not proceeded further ⸺ it has instituted self-help dilatory litigation tactics.

This case was filed on March 20, 2014, and has been pending for well over a year.  Since that time, the parties have engaged in negotiations for a Scheduling Order, which Netflix delayed and forced this Court to weighed in on certain provisions.  The Court sided with Copy Protection and entered a Scheduling Order on September 22, 2014.  Then, Netflix again delayed and forced the Court to intervene in order to resolve a dispute involving the Protective Order.  The Court

again ruled in favor of Copy Protection and against Netflix's proposed inclusion of an acquisition bar in the Protective Order.

Both parties have served Interrogatories and Document Requests and have spent significant resources responding to them. Copy Protection has spent significant time and effort producing documents in response to Netflix's requests. Experts have been engaged, and a significant amount of monetary resources have already been spent by Copy Protection to review source code. By contrast, Netflix is engaged in self-help dilatory tactics in that it refuses to produce some of the most basic documents responsive to Copy Protection's discovery requests, including financial documents related to damages and additional technical documents.

In contrast, when Netflix requested all license agreements to the '649 Patent from Copy Protection, it spent considerable efforts notifying all licensees and seeking approval to produce those license agreements. Copy Protection has produced a substantial number of those license agreements so far, yet Netflix has produced none. For example, Copy Protection requested Netflix to produce its content provider license agreements, which Copy Protection believes are highly relevant and discoverable. Yet Netflix has refused to provide such agreements and is denying Copy Protection from the discovery it requested months ago.

Adding to such self-help delay is Netflix's refusal to proceed with depositions of the inventors of the '649 Patent. Netflix requested the depositions of the inventors, and Copy Protection arranged dates for those depositions. But when Netflix learned that the depositions would occur in the United Kingdom, where the inventors reside, (and despite for example, agreeing to take depositions where the party resides in the Scheduling Order) Netflix refused to travel to the United Kingdom to take those depositions. The only basis for such a refusal seems

to be a delay and to make it appear as though discovery in this case has only recently begun. Such tactics should not be rewarded by the granting of a stay.

Additionally, Netflix conveniently forgets to address the status of *Markman* in its Stay Motion.  Both parties are set to exchange their opening briefs only days after Netflix's Stay Motion will be fully briefed.  Both parties have already devoted a substantial amount of time leading up to the claim construction briefs.  For example, both parties determined the specific claim terms that require construction.  Then, each party provided its construction for each of those terms.  Next, each party conducted a series of meet and confers in order to narrow the scope of the terms requiring construction.  Finally, the parties exchanged intrinsic evidence to support their positions and assembled a joint claim construction document which was filed with the Court.  Throughout the process, Copy Protection has consulted experts in order to determine the qualifications for one skilled in the art and how one skilled in the art would understand certain claim terms.  Surely, both parties have devoted a substantial amount of time to briefing these issues by the time this motion is fully briefed because opening *Markman* briefs are due only days after.

It should also be mentioned that the Court's Scheduling Order anticipates that its claim construction order will be issued within 60 days of the conclusion of the claim construction hearing, which is scheduled for July 20, 2015.  That means the entire *Markman* proceeding will be complete well before the PTAB even decides whether or not to initiate the IPR in the beginning of October.  As the Court is probably aware, oftentimes claim construction orders can resolve disputes.  This fact heavily favors denying Netflix's requested stay because the case may resolve as a result of this Court's *Markman* ruling.  Such resolution would occur much quicker

16

than the IPR final written decision and may even occur before the PTAB even decides whether or not to initiate the IPR, which may also have the effect of settling the IPR.

Regardless, the stage of this litigation should be viewed against the stage of the IPR. *ImageVision.net*, 2013 U.S. Dist. LEXIS 25015, at *12 (holding that the stage of litigation must be balanced against the stage of the [PTO] proceedings). In this particular case, the PTAB will not even rule on whether to institute the IPR until the beginning of October ⸺ weeks after the close of fact discovery in this case and most likely after a *Markman* ruling. Indeed, Copy Protection has not even filed its preliminary response to the IPR and has until the beginning of July to do so.

As a result of the early stage of the IPR, and because it has not yet been instituted, this factor does not weigh in favor of a stay.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Copy Protection respectfully submits that Netflix has not carried its burden of demonstrating why this litigation should be stayed for a speculative IPR. Accordingly, Netflix's motion to stay should be denied.

Dated: May 11, 2015

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE  19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Jonathan A. David (admitted *pro hac vice*)
Stephen F. Roth (admitted *pro hac vice*)
Aaron S. Eckenthal (admitted *pro hac vice*)
Maegan A. Fuller (admitted *pro hac vice*)
LERNER, DAVID, LITTENBERG,
  KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ  07090
(908) 654-5000
(908) 654-7866 (Fax)
jdavid@ldlkm.com
sroth@ldlkm.com
aeckenthal@ldlkm.com
mfuller@ldlkm.com

*Attorneys for Plaintiff*